FILED

2013 Feb-13  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **LARRY HENDERSON, a minor,** ) | |
| **who sues by and through his Mother** ) | |
| **and next friend, DEBORAH** ) | |
| **HENDERSON, and DEBORAH** ) | |
| **HENDERSON, individually,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:12-CV-1070-VEH** |
| ) | |
| **CITY OF FAIRFIELD, ALABAMA,** ) | |
| **a municipal corporation; PAT** ) | |
| **MARDIS, individually and in her** ) | |
| **official capacity; and K. DUDLEY,** ) | |
| **individually and in his official** ) | |
| **capacity,** ) | |
| ) | |
| **Defendants.** ) | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS CAUSE is before the court on the Motion to Dismiss Plaintiffs'

Amended Complaint (the "Motion") (Doc. 13), filed on September 12, 2012 by

Defendants Officer K. Dudley ("Dudley") and the City of Fairfield (the "City").[1]

Plaintiff timely responded on October 24, 2012.  (Doc. 17.)  Neither Defendant

---

[1] The other Defendant, Pat Mardis, did not move to dismiss the Complaint.  (See Doc. 13, 14, & 15.)  In fact, it appears that Mardis was never served with a complaint in either state court or this court.  (*See* Doc. 1-1 at 41–45.)  Therefore, this court will enter a separate show cause order as to why Mardis should not be dismissed from this action.

filed a reply brief.  Therefore, the Motion is now ripe for disposition.

# I.    FACTS AND PROCEDURAL HISTORY[2]

The facts relevant to the Motion to Dismiss are these.  On March 6, 2010, Plaintiff Larry Henderson ("Henderson"), then a minor, went to the Wal-Mart in Fairfield, Alabama with four friends.  No one in the group was armed.  Inside the Wal-Mart, one of Henderson's friends got into an altercation with another person. When the altercation started, Henderson and his friends left Wal-Mart and proceeded on foot to the mall next door.  Upon entering the mall, the group was surrounded by several Fairfield police officers, including Dudley.  Apparently, the officers wanted to talk to the young men about the altercation in Wal-Mart.  One of Henderson's friends ran past the officers.  The officers attempted to grab him, but he slipped away.

At that point, Henderson also ran away from the officers and into the parking lot.  Henderson never threatened or touched any of the officers. Henderson alleges he was trying to get back to his car so he could go home. Henderson further alleges that he feared the officers would harm him.

---

[2] On a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  Therefore, the court states the facts as alleged in Henderson's Amended Complaint.

Dudley and another officer gave chase with their guns drawn.  They yelled at Henderson to stop and get down, but he continued running.  Another officer in a police cruiser drove through the parking lot and pulled in front of Henderson, blocking his route.  At this point, Henderson immediately stopped and placed both hands above his head.  Henderson turned his head around toward Dudley and the other pursuing officer.  At that moment, Dudley struck Henderson in the back of his head with the butt of his pistol.  The blow was strong enough to knock Henderson off his feet and against the side of the cruiser.

Dudley then opened the rear passenger door of the cruiser and angrily yelled, "I told you to stop running from me."  (Doc. 12 at 7.)  Dudley then hit Henderson in the back of the head with his gun several more times.  (Doc. 12 at 7, ¶ 26.)  Dudley forced Henderson into the back of the cruiser.  As he did so, he slapped Henderson with the butt of his gun twice, both times on the right side of his face.  Neither the officer in the cruiser nor the officer who pursued Henderson attempted to stop Dudley.  Henderson never resisted Dudley after he stopped running and put his hands above his head.

When Dudley put Henderson in the backseat of the cruiser, his right ear was bleeding profusely.  None of the officers on the scene administered first aide to Henderson.  When the paramedics arrived, they treated Henderson's wounds.

3

Dudley wanted to take Henderson to jail, but the paramedics insisted he go to the hospital.  The police officer who was driving the cruiser and Dudley eventually took Henderson to the emergency room of Children's Hospital, where he was admitted.  Henderson's wounds were treated, and he was released about two hours later.  During this time, he became unconscious.  Upon being released from the emergency room, Dudley took Henderson to Family Court detention.

Meanwhile, someone contacted Henderson's mother.  She was concerned and spent the next couple of hours trying to contact and locate her son.  At one point, she talked to Henderson on Dudley's personal cell phone.  Dudley ended the call as soon as Henderson said that Dudley had hit him in the head.  Henderson's mother tried to call Dudley back, but he refused to answer.  Eventually, Henderson's mother located him at Family Court detention.  She picked him up between 11:30 p.m. and midnight.

After the incident, Henderson's mother filed a written complaint with the Chief of the Fairfield Police Department, Pat Mardis ("Mardis").  However, no one ever contacted her about the complaint.  Dudley was never disciplined regarding this incident. Additionally, Dudley attempted to charge Henderson with Disorderly Conduct, Ala. Code § 13A-11-7, and Resisting Arrest, Ala. Code § 13A-10-41, but the charges were dropped.

4

Henderson filed suit against the Defendants on March 5, 2012 in the Circuit Court of Jefferson County, Alabama.  On April 6, 2012, the City and Dudley timely removed this action to this court.  (*See* Doc. 1.)  The Notice of Removal states that Defendant Pat Mardis had not yet been served with the state-court complaint.

After removing this case, the City and Dudley moved to dismiss Henderson's complaint.  Henderson then sought leave to amend his complaint, which this court granted on July 26, 2012.

Henderson filed his Amended Complaint on August 29, 2012.  (Doc. 12.) The Amended Complaint alleges the above facts.  It also alleges that the City authorized, ratified, and confirmed Dudley's conduct, failed to properly supervise and train him and other officers, maintained a policy or custom allowing the widespread use of excessive force, lacked formal procedures to investigate citizen complaints, and failed to have formal policies, rules, and regulations regarding police officer conduct and police procedures.  (*See* Doc. 12 at 7, ¶ 58.)  Henderson further alleges that the officers' conduct "shocks the conscience" and "constitutes . . . gross, willful, intentional, and malicious conduct . . . [which] shakes the very foundation of our civilized society . . . ."  (Doc. 12 at 12, ¶ 64–65.)

The Amended Complaint asserts twelve counts: (1) a § 1983 claim against Dudley, Mardis, and the City for deliberate indifference to Henderson's right to be free from excessive force; (2) a § 1983 claim against Dudley for unlawful arrest and use of excessive force during the arrest; (3) a claim against Dudley under the Fourth and Fourteenth Amendment for unlawful arrest; (4) a claim under the Fourth Amendment against the two unnamed officers that assisted Dudley for denying Henderson due process in failing to intervene and stop Dudley; (5) a § 1983 claim against Mardis and the City for ratification of Dudley's actions; (6) a § 1983 claim against Mardis and the City for failure to train; (7) a § 1983 claim against Mardis and the City for having a custom or practice of using or allowing officers to use excessive force, investigate citizen complaints, or otherwise supervise its officers; (8) a § 1983 claim against Mardis and the City for failing to supervise Dudley and other officers and for failing to respond to Henderson's complaint about Dudley; (9) a state law claim against Dudley for assault and battery and the intentional infliction of emotional distress; (10) a state law claim against Dudley for abuse of process, malicious prosecution, and false imprisonment; (11) a state law claim against Mardis and the City for respondeat superior liability; (12) a state claim against all Defendants for damages for the loss of services of a minor .  Henderson also seeks punitive damages from all

Defendants.[3]

While the complaint clearly alleges which claims are against Dudley and which claims are against the City and/or the two unnamed officers and/or Mardis, the court notes that Henderson has sued Dudley in his individual and official capacities. Therefore, in all counts where Henderson names Dudley as a defendant, it appears he also intended to name the City as a defendant. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985). Thus, the court will assume that all counts which name only Dudley also include the City. With this background information in mind, the court turns to the legal standard for a motion to dismiss.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957), *abrogated by*

---

[3] The first eleven claims are brought by Henderson. The last claim (Count 12) is brought by Henderson's mother, Deborah Henderson ("Ms. Henderson") individually.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955  (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of her entitlement to relief, Rule 8 does not mandate the inclusion of detailed factual allegations within a complaint. *Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47, 78 S. Ct. 103).  However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (emphasis added).  The court therefore "accept[s] as true the facts set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680; 129 S. Ct. at 1950-51.

8

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted)

**B.    Federal Qualified Immunity**

Because qualified immunity is a central issue in this case, the court sets forth the legal standard here. Federal qualified immunity is an immunity from suit, not just from damages. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). Therefore, if a defendant is entitled to qualified immunity on a claim, the court must dismiss that claim. *See id.*

The qualified immunity analysis proceeds in two phases. "To claim qualified immunity, a defendant must first show he was performing a discretionary function." *Barnes v. Zaccari*, 669 F.3d 1295, 1302–03 (11th Cir. 2012) (internal citations and quotation marks omitted). If the defendant meets this burden, "[t]he burden then shifts to the plaintiff to show that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the violation." *See id.* (internal citations and quotation marks omitted).

To determine if a government employee was involved in a discretionary

function, the court "asks whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted).

To determine if the defendant violated a constitutional right, the court must examine the particular right asserted. However, regardless of the right asserted, a plaintiff can only show that the right was clearly established in one of three ways. First, a plaintiff may show that the federal statute or constitutional provision is enough—on its face—to establish the right asserted. *See Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). Such cases are referred to as "obvious clarity" cases. *Id.* Second, a plaintiff may show "that some broad statements of principle in case law, [although] not tied to particularized facts," clearly establishes the right in subsequent cases. *See id.* at 1351. Third, the plaintiff may point to a previous decision of the Supreme Court, the Eleventh Circuit, or the relevant state supreme court which says that the defendant's conduct violates the right at issue. *See id.* at 1351–52.

## C.    State Agent Immunity

Because Alabama's state agent immunity is a central issue in this case, the court sets forth the legal standard here. State-agent immunity, like federal qualified

immunity, protects state employees "in the exercise of their judgment in executing their work responsibilities." *Ex parte Estate of Reynolds*, 946 So.2d 450, 453 (Ala. 2006).

"In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity.  If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  *Id.* at 452 (internal quotation marks and citations omitted); *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740–741 (11th Cir. 2010).

### D.    Municipal Liability under § 1983

Finally, Henderson's attempts to hold the City liable for Dudley's actions. Because municipal liability under § 1983 differs from ordinary vicarious liability, the court sets forth the applicable legal standard here.

There is no respondeat superior or vicarious liability under § 1983.  *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Instead, to hold a municipality liable, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the

11

violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95, 98 S. Ct. 2037–38 (1978)).  A plaintiff can show an official policy either by (1) alleging "an officially promulgated [municipal] policy" or (2) alleging "an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]."  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Regarding the custom requirement, the Eleventh Circuit has said:

> We define[] custom as a practice that is so settled and permanent that it takes on the force of the law.  In order for a plaintiff to demonstrate a policy or custom, it is <u>generally necessary to show a persistent and wide-spread practice</u>.

*McDowell*, 392 F.3d at 1290 (internal quotation marks and citations omitted) (emphasis added).  The policy or custom requirement ensures that "a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  <u>This prevents the imposition of liability based upon an isolated incident</u>."  *Id.* (emphasis added).

## III.   ANALYSIS

### A.    Claims against Dudley in his Individual Capacity

1.   <u>Federal Claims</u>

     a.   *Challenges under* Twombly *and* Iqbal

Initially, the court finds that Henderson's Amended Complaint contains sufficient factual allegations under *Twombly* and *Iqbal*.  Dudley contends that Counts 1, 2, and 3 of the Amended Complaint merely recite the elements of a cause of action and, therefore, must fail.  (Doc. 15 at 4.)  Dudley overlooks the fact that these counts incorporate the Amended Complaint's factual allegations.  (*See* Doc. 12 at 5–13, ¶ 12–69; at 13, ¶ 70; at 14, ¶ 73; at 15, ¶ 78.)  Because the factual allegations give Dudley adequate notice of the substance of Henderson's claims, the court rejects Dudley's contention.

     b.   *Qualified Immunity*

Because Henderson's complaint does more than merely recite the elements of a cause of action, the court must determine if the alleged facts actually state a claim for which the court can grant relief.  *See* Fed. R. Civ. P. 12(b)(6).  Dudley has raised qualified immunity as a defense.  If Dudley is entitled to qualified immunity on a claim, then the court must dismiss that claim.

 Henderson alleges three federal claims against Dudley—Counts 1, 2, and 3. But, upon closer inspection, these counts only complain about two actions.  First, Henderson complains that Dudley used excessive force (Counts 1 and 2).  Second,

Henderson complains that Dudley unlawfully arrested him (Counts 2 and 3).

Regarding either claim, Henderson cannot seriously contend that Dudley was not performing a discretionary function. *See, e.g.*, *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (stating that "[b]ecause making an arrest is within the official responsibilities of a [police officer], [the defendant] was performing a discretionary function when he arrested [the plaintiff].") Therefore, the burden shifts to Henderson to show that Dudley violated a constitutional right, and that the right was clearly established.

### i.   Excessive Force

Henderson has met his burden on the excessive force claim. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer. Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (internal citations and quotation marks omitted).

In determining whether the force used was reasonable, the court must consider several factors. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct.

1865, 1872 (1989); *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008).

These factors include (1) "the severity of the crime at issue," (2) "whether the

suspect poses an immediate threat to the safety of the officers or others," and (3)

"whether [the suspect]is actively resisting arrest or attempting to evade arrest by

flight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872.

In this case, all three factors weigh in Henderson's favor.  First, Henderson

was suspected of Disorderly Conduct—a Class C misdemeanor.  Henderson did

run from the officers, but this fact does not amplify the severity of Henderson's

alleged offense.  Second, Henderson never posed a serious threat to the safety of

the officers or others.  Instead, Henderson was stopped and surrounded in the

middle of a parking lot.  And, although he initially ran from the officers, he was

stopped with his hands raised by the time Dudley caught up with him.

This fact means that the third factor also weighs in Henderson's favor.

Though Henderson fled from Dudley, he was not fleeing when Dudley used force

against him.  In fact, Henderson was surrounded and was signaling his intent to

surrender. Thus, Henderson was not evading arrest when Dudley began to use

force against him.

After considering these factors, the court finds that Dudley's use of force

was unreasonable under the circumstances.  Henderson was suspected of a minor

offense, was not armed, and was not acting in a threatening manner.  Although Henderson ran from the officers and disobeyed their commands, he eventually stopped and put his hands up <u>before</u> Dudley began using force.  When Dudley hit Henderson, he was standing in the middle of a parking lot with a police cruiser in front of him and two officers directly behind him.  His hands were raised above his head signaling his intent to surrender.  Despite this, Dudley came from behind Henderson and pistol whipped him to the back of his head hard enough to knock him into the police cruiser.

Further, Henderson alleges that, after the initial blow to his head by Dudley's gun butt, Dudley stopped and opened the door of the police cruiser. Dudley then returned to Henderson and hit him with the butt of his gun several more times.  At the time of these blows, Henderson was not resisting Dudley nor was he attempting to flee.  So, even <u>if</u> Dudley arguably was acting reasonably when he hit Henderson the first time, he clearly had no justifiable reason to resume hitting him in the head with his gun butt.  Moreover, Dudley also slapped Henderson's face with his gun two more times as he was putting him into the patrol car.  Not surprisingly, Dudley's repeated pistol whipping of Henderson caused severe injuries.  In fact, Dudley and another officer, at the paramedic's insistence, took Henderson directly to the emergency room of Children's Hospital

16

(where he was admitted), rather than to Family Court detention.  Because Dudley's use of force was unreasonable under the circumstances, he violated Henderson's right under the Fourth Amendment to be free from excessive force.

Next, the court must determine if the law was clearly established on March 6, 2010 that Dudley's use of force was unreasonable.  The court concludes that it was.  The Eleventh Circuit has repeatedly said that an officer's use of significant force against a restrained, non-resisting suspect is unreasonable.  *See Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) ("In view of the fact that [plaintiff] was lying face down on the ground, was not suspected of having committed a serious crime, did not pose an immediate threat of harm to anyone, and was not actively resisting or evading arrest, the defendants' use of force was a wholly disproportionate response to the situation."); *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002) (suspect was handcuffed and secured in back of police cruiser when officer used pepper spray); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (suspect was handcuffed and was not resisting officers when they beat his head into the pavement, kicked him in the ribs, and knocked him unconscious); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000) (suspect surrendered immediately and was lying on the ground when officer allowed police dog to attack him for two minutes).  Moreover, these cases have

17

also said that this principle is so far "beyond the hazy border between excessive and acceptable force" that every reasonable officer would have known it violated the Fourth Amendment. *Harbert*, 527 F.3d at 1274 (citing Priester, 208 F.3d at 926); *see Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000)

In this case, Dudley repeatedly pistol whipped the head and face of a nonthreatening and non-resisting suspect. *Harbert*, *Vinyard*, and *Priester* all establish a broad principle that this conduct violates the Fourth Amendment. Moreover, these cases establish that Dudley's conduct would clearly violate the Fourth Amendment, even in the absence of factually similar case law. Thus, this is both a broad principle and obvious clarity case. Because Dudley had fair warning that his use of significant force against Henderson would violate the Fourth Amendment, he is not entitled to qualified immunity on the excessive force claim. The Motion is due to be **DENIED** as to that claim.

## ii.   False Arrest

Turning to Henderson's false arrest claim, Dudley has established his entitlement to qualified immunity. An officer is entitled to qualified immunity on a false arrest claim if the officer had arguable probable cause for the arrest. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003). Here, Dudley had at

18

least arguable probable cause—if not actual probable cause—to arrest Henderson. Henderson was with a group of friends, one of whom got into an altercation in Wal-Mart.  Alabama Code § 13A-11-7 (Disorderly Conduct) punishes individuals who engage in fighting, make unreasonable noise, or use abusive or obscene language in a public setting.  Although Henderson himself was not involved in the altercation, one of his friends was.  And, though Dudley did not witness the altercation, he apparently had reason to believe that Henderson's group was involved in it.  Otherwise, the officers would not have confronted the young men inside the mall. When they did, Henderson ran.  Based on that information, Dudley could reasonably have believed that Henderson was involved in the altercation.

Furthermore, when Henderson fled, Dudley yelled at him to stop and lay down.  Henderson disobeyed that order.  At that point, Henderson arguably violated Alabama Code § 13A-10-41 (Resisting Arrest), which punishes individuals who "prevent[] or attempt[] to prevent a peace officer from affecting a lawful arrest of himself or of another person."

Because Dudley had arguable probable cause to arrest Henderson for either Disorderly Conduct or Resisting Arrest, he is entitled to qualified immunity on Henderson's false arrest claim.  Therefore, Dudley's Motion is **GRANTED** as to this claim.

19

2.     State Law Claims

Henderson alleges state law claims for (1) assault and battery (Count 9), (2) intentional infliction of emotional distress (Count 9), (3) abuse of process and malicious prosecution (Count 10), and (4) false imprisonment (Count 10).  Ms. Henderson also asserts a state law claim for loss of services of a minor (Count 12). Dudley asserts state-agent immunity as to each of these claims.

Henderson cannot seriously dispute that Dudley was engaged in a discretionary function.  In fact, the Supreme Court of Alabama has clearly said that a police officer's decision to arrest a suspect is a discretionary function.  *See Ex parte City of Tuskegee*, 932 So. 2d 895, 905 (Ala. 2005).  Therefore, the question becomes whether Henderson adequately alleges that Dudley acted willfully, maliciously, or in bad faith as to each of his claims.

a.     *Assault and Battery*

The court has already determined that every reasonable officer would conclude that Dudley's use of force under the circumstances violated Henderson's Fourth Amendment rights.  *See* Section III.A.1.b.i.  If every reasonable officer would reach this conclusion, then Henderson has adequately alleged that Dudley willfully or maliciously acted beyond his authority.  Dudley's Motion is, therefore, due to be **DENIED** on Henderson's assault and battery claim.

20

b.   *Intentional Infliction of Emotional Distress*

Dudley offers no argument for the dismissal of Henderson's intentional-infliction-of-emotional-distress claim.  (*See* Doc. 15 at 14–17.)  In fact, it appears that Dudley overlooked the emotional distress claim entirely.  (*See* Doc. 15 at 15) ("remaining state law claims against Officer Dudley are Counts Nine and Ten, which are for 'Assault and Battery' and 'Abuse of Process and False Imprisonment–Malice") (emphasis added).  However, Count 9 of the Amended Complaint clearly states that it is for "Assault and Battery — Intentional Infliction of Emotional Distress."  (See Doc. 12 at 21.)  Because Dudley offers no argument on the intentional-infliction-of-emotional-distress claim, the Motion is **DENIED** as to this claim.

c.   *Abuse of Process / Malicious Prosecution*

Henderson's abuse-of-process claims hinges on Dudley's efforts to prosecute Henderson for Disorderly Conduct and Resisting Arrest.  To establish a malicious prosecution claim, Henderson must show, among other things, that "in instituting the prior proceeding the present defendant acted without probable cause and with malice."  *See Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 174 (Ala. 2000).  In this situation, probable cause means "a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or

entertain an honest and strong suspicion that the person arrested is guilty." *See id.*

The court has already determined that Dudley had arguable probable cause—if not

actual probable cause—to arrest Henderson for disorderly conduct and resisting

arrest. *See* Section III.A.1.b.ii. Therefore, Dudley had arguable probable cause to

press charges against Henderson. The Motion is due to be **GRANTED** as to this

claim.

### d.    *False Imprisonment*

Like Henderson's abuse-of-process claim, Henderson's false-imprisonment

claim fails if a reasonable officer in Dudley's position could have believe he had

probable cause to arrest Henderson. *See Walker v. City of Huntsville*, 62 So. 3d

474, 492 (Ala. 2010). The court has already determined that Dudley had

arguable—if not actual—probable cause to arrest Henderson. *See* Section

III.A.1.b.ii. Therefore, the Motion is due to be **GRANTED** as to this claim.

### e.    *Loss of Services of a Minor*

This claim is not asserted by Henderson, but by his mother. Alabama law

recognizes that a parent may recover damages for the loss of her child's services.

*See Hannon v. Duncan*, 594 So. 2d 85, 93 (Ala. 1992). However, a loss-of-

services claim is derivative of the injured party's claim for damages. *See Flying J*

*Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008).

Therefore, Ms. Henderson's claim will stand or fall with Henderson's claims. Because Henderson's claims for excessive force, intentional infliction of emotional distress, and assault and battery remain pending against Dudley, Ms. Henderson could recover damages from him for her son's injuries. Therefore, the Motion is **DENIED** as to Ms. Henderson's loss-of-services claim.

### B.      Claims Against the City

As noted earlier, the court assumes that each count alleged against Dudley includes an official capacity claim. Therefore, the court will address each count against Dudley as if the claim was alleged against the City.

#### 1.      Federal Claims

##### a.      *Inadequate Pleading*

Because the court assumes all claims against Dudley include an official capacity claim, there are eight federal counts against the City—Counts 1 through 8. All eight counts fail for the same reason: Henderson has failed to adequately allege that the City had a policy or custom which caused Dudley to violate his constitutional rights.

To hold a municipality liable under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3)

23

that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95, 98 S. Ct. 2037–38 (1978)).  A plaintiff can show an official policy either by (1) alleging "an officially promulgated [municipal] policy" or (2) alleging "an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

In this case, Henderson's Amended Complaint uses the buzzwords policy, custom, and practice.  (*See* Doc. 12 at 19.)  However, Henderson has alleged no facts which even remotely suggest that Dudley's alleged use of excessive force was more than an isolated incident.  The Amended Complaint offers nothing more than legal conclusions to support Henderson's claims against the city.  (See Doc. 12 at 19) ("The violation of Henderson's rights was pursuant to a long standing custom and practice of implicit approval by the City of Fairfield and Mardis' of the unofficial use of excessive force and unlawful arrests by members of the Fairfield Police Department . . . .").  But, legal conclusions are insufficient to state a claim under the Federal Rules of Civil Procedure.  *See  Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (stating that legal conclusion are "not entitled to the assumption

24

of truth.").   Because Henderson has alleged no facts which show a policy or custom by the City regarding Dudley's use of excessive force or unlawful arrest, the Motion is due to be **GRANTED** on all federal claims against the City.[4]

### b.    *Unlawful Arrest Claim*

Counts 2 and 3 allege that Dudley made an unlawful arrest.   However, as determined in Section III.A.1.b.ii above, Dudley had arguable probable cause to arrest Henderson.   Therefore, Henderson has not shown that Dudley committed a constitutional violation related to his arrest.   For this additional reason, Counts 2 and 3 against the City are due to be **DISMISSED**.

### c.    *Ratification of Dudley's Actions*

Count 5 alleges that Mardis (and thereby the City) ratified Dudley's use of excessive force.   The Amended Complaint does not explain how Mardis could ratify Dudley's use of excessive force.   However, even if Mardis could, and did, ratify Dudley's use of excessive force, Henderson's claim would still fail.   Henderson must show that the City's policy or custom caused the constitutional

---

[4]  Count 4 alleges a § 1983 claim against the two officers who failed to stop Dudley's assault.  Because these officers are not named in the Amended Complaint, the counts against them are due to be dismissed at this time.  However, even assuming that this claim is viable against them in the <u>individual</u> capacity, and even assuming this claim includes an official capacity claim against the two officers, the claim would still fail as to the official capacity claim and as a claim against the City.  Henderson alleges no facts which show the City had a policy, practice, or custom of officers refusing to stop other officers from assaulting suspects.

violation.  *See McDowell*, 392 F.3d at 1289.  Ratification of an act, by definition,

comes after the act has already occurred.  *See* Black's Law Dictionary 1289 (8th

ed. 2004) ("confirmation and acceptance of a <u>previous act</u>, thereby making the act

valid from the moment it was done.") (emphasis added).  Therefore, any

ratification could not have caused Dudley to use excessive force.  For this

additional reason, Count 5 is due to be **DISMISSED**.

d.  *Failure to Train or Supervise*

Count 6 alleges that the City failed to adequately train Dudley and the other

arresting officers.  To be liable under § 1983 for failure-to-train its employees, a

municipality's policymakers must make a conscious decision which "evidences a

'deliberate indifference' to the rights of [the municipality's] inhabitants . . . ."  *City

of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989).  "To

establish . . . 'deliberate indifference,' a plaintiff must present some evidence that

the municipality knew of a need to train and/or supervise in a particular area and

the municipality made a deliberate choice not to take any action."  *Gold v. City of

Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Henderson's Amended Complaint is devoid of any facts which show that

the City's policymakers knew of a need to train its officers and failed to act.

Instead, Henderson relies on legal conclusions that the City's training was

26

inadequate.  These allegations are not entitled to a presumption of truth, and

therefore, Henderson's failure-to-train claim must fail.  For this additional reason,

Count 6 is due to be **DISMISSED**.

        e.    *Failure to Respond to Ms. Henderson's Complaint*

Counts 7 and 8 allege that the City violated § 1983 by failing to discipline

Dudley and the other arresting officers.  Counts 7 and 8 also allege that the City

violated § 1983 by failing to investigate and respond to Ms. Henderson's

complaint about Dudley.  To the extent Counts 7 and 8 challenge the City's failure

to investigate, respond to, or act on Ms. Henderson's complaint (or otherwise

discipline Dudley), these counts are due to be **DISMISSED** because Henderson

has not shown these actions violated a constitutional right.

        2.    State Claims Against the City

        a.    *Assault and Battery and Intentional Infliction of Emotional Distress*

Count 9 alleges a claim against Dudley for assault and battery and

intentional infliction of emotional distress.  Assuming that this claim is also

against Dudley in his official capacity (and therefore against the City), the claim

must fail.  Ala. Code § 11-47-190 limits the City's liability to wrongs "done or

suffered through the neglect, carelessness, or unskillfulness of some agent, officer,

or employee of the municipality engaged in work therefor and while acting in the line of his or her duty."  Count 9 specifically alleges that Dudley acted "willfully, maliciously, outrageously, recklessly, deliberately, and with the intention to inflict personal injuries . . . ."  (Doc. 12 at 21, ¶ 101.)  Therefore, Dudley could not have acted negligently, carelessly, or unskillfully in apprehending, arresting, and prosecuting Henderson.  The City's Motion is due to be **GRANTED** as to Count 9.

> b.    *Abuse of Process and False Imprisonment*

The court has already determined that Officer Dudley had sufficient probable cause to arrest and press charges against Henderson.  *See* Section III.A.1.b.ii.  Because Henderson's abuse-of-process and false-imprisonment claims against Dudley fail on the merits, the City cannot be vicariously liable.  Therefore, the City's Motion is due to be **GRANTED** as to Count 10.

> c.    *Respondeat Superior Liability*

Count 11 alleges, in general terms, that the City is vicariously liable for Dudley's actions.  This claim also fails.  First, to the extent Dudley is entitled to state-agent immunity under Ala. Code § 6-5-338, this immunity extends to the City as well.  *See* Ala. Code § 6-5-338(b); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 742 (11th Cir. 2010); *see also Ex parte City of Gadsden*, 781 So. 2d

936. For that reason, the City cannot be liable for Henderson's arrest and prosecution.  *See* Section III.A.2.c & III.A.2.d (determining that Dudley is entitled to state-agent immunity on Henderson's abuse of process and false imprisonment claims).

Additionally, on the facts alleged by Henderson, the City is not liable for Dudley's use of force.  Under Ala. Code § 11-47-190, the City can only be liable if Dudly acted "negligently, carelessly, or unskillfully."  Put simply, the City is not liable for the "intentional torts of its employees."  *Brown*, 608 F.3d at 743; *see also Quainoo v. City of Huntsville*, No. 5:10-CV-104-AKK, (N.D.Ala. December 9, 2011), Doc. 51 at 32–34, *affirmed by*, No. 12-10106, 2013 WL 382712 (11th Cir. February 1, 2013) (unpublished).

Here, Henderson has alleged no facts which suggest that Dudley acted unskillfully.  In fact, the act of pistol whipping Henderson multiple times after he had stopped and raised his hands clearly alleges intentional acts.  No reasonable officer would believe this degree of force was permitted by the Fourth Amendment.  And, Henderson has alleged no facts which suggest that Dudley had a mistaken understanding of the Fourth Amendment.  At the very least, Henderson never alleges that Dudley's actions were unintentional.  Therefore, the City's Motion is due to be **GRANTED** as to Count 11.

        d.   *Loss of Services*

As discussed in Section III.A.2.e above, Ms. Henderson's claim for loss of services is derivative of Henderson's claims.  Because none of Henderson's claims against the City remain pending, Ms. Henderson's claim for loss of services against the City also fails.  Therefore, the City's Motion is **GRANTED** as to Count 12.

     **C.**    **Punitive Damages**

The court has dismissed all claims against the City.  However, the court notes that, even if Henderson had a viable claim against the City, he would not be entitled to punitive damages from it.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); Ala. Code § 6-11-26 ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof . . . ."); *see also Carson v. City of Prichard*, 709 So. 2d 1199, 1206 (Ala. 1998).

**IV.**   **CONCLUSION**

For the foregoing reasons, Dudley's Motion is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

     A.    The Motion is **DENIED** as to the excessive force claim in Counts 1

and 2;

B.     The Motion is **GRANTED** as to the false arrest claim in Counts 1, 2, and 3;

C.     The Motion is **DENIED** as to Count 9;

D.     The Motion is **GRANTED** as to Count 10;

E.     The Motion is **DENIED** as to Count 12.

The City's Motion is hereby **GRANTED**.  All claims against the City are

**DISMISSED** for failure to state a claim.

    **DONE** and **ORDERED** this the 13th day of February, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

31